HALLIE A. TUTTLE *v.* E. H. TRENT ET AL.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 4-6404-3016

592

Argued February 7—decided March 25, 1966

*Francis M. McDonald,* of Waterbury, for the appellant (plaintiff).

*Howard R. Matzkin,* of Waterbury, for the appellee, Harklis Trent (defendant).

JACOBS, J.   This action was brought to recover for damage caused to the plaintiff's automobile, which was struck, while parked, owing to the negligence of the named defendant, whom we shall refer to as the son, in the operation of a 1953 Buick automobile which was registered in the name of his father, Harklis Trent, hereinafter referred to as the father.  The court rendered judgment for the plaintiff to recover damages against the son only, and from the judgment in favor of the father the plaintiff has appealed.

It is undisputed that at the time of the accident, which occurred on May 3, 1963, the son was a minor just under the age of twenty-one years.  He was a married man.  He lived with his wife and children in an apartment of his own in the city of Waterbury.  The negotiations for the purchase of the car

were carried on by him; he alone paid the purchase price and maintained the car and the other expenses of upkeep. He used the car "completely for every purpose of his own, including getting back and forth to work." He was in pursuit of his own private affairs, unrelated to and unconnected with the business of his father. The father had a car of his own which he always used; he never used his son's car. The son had complete control, custody and use of the car at all times, and he alone maintained it. To secure registration of the motor vehicle, it was necessary for the son to file with the commissioner of motor vehicles a certificate signed by either or both of his parents approving the registration; General Statutes § 14-14;[1] and he was also required to file with the commissioner proof of financial responsibility in amounts specified in the statute. § 14-112. No attempt was made by the defendants so to register the 1953 Buick car. There can be no doubt that the reason why the car was registered in the father's name was to avoid proof of financial responsibility as required by the statute. And now that an accident has happened owing to the negligence of the son, the father seeks to insulate himself from liability and to restrict it to his minor son.

The first question presented to us for our determination is whether the family car doctrine applies. To fasten liability upon the father under the family car doctrine (§ 52-182), it would have to be found that the car was maintained by the father as a car for the convenience of a group constituting the household. But the son had his own household. See *Pietrykowski* v. *Rodek,* 16 Conn. Sup. 192,

[1] Section 14-14 was amended in 1963 by Public Act No. 171, by the terms of which the certificate may now be signed by either or both of the parents or by "the spouse, being twenty-one years of age, of a married minor applicant." The change in the statute has no relevancy to the instant case.

194; Wright, Connecticut Law of Torts § 64; p. 94 & n.7. "An indispensable requisite of the family purpose doctrine is that the person on whom it is sought to impose liability own, maintain, or furnish the automobile, and have or exercise some degree of control over its use." 60 C.J.S. 1070, Motor Vehicles, § 433(c); see *Durso* v. *A. D. Cozzolino, Inc.,* 128 Conn. 24, 26. "In the typical case liability is sought to be imposed under the [family car] doctrine upon one who is both owner of the vehicle and head of the family, but he is not required to be either one of these things. So far as ownership goes, the right of control over the vehicle's use, rather than legal title, is generally made the test." 2 Harper & James, Torts, p. 1421. "Liability under this doctrine is not confined to owner or driver. It depends upon control and use." 7-8 Huddy, Automobile Law (9th Ed.) § 125, p. 325. Since the car was always in the control of the son, the plaintiff failed to establish an indispensable requisite for the application of the doctrine. Upon the facts as we have recited them, it cannot be said that this was a car which was maintained by the father for the general use, pleasure and convenience of the family. The court was clearly correct in concluding that the family car doctrine could have no application here. *Krappatsch* v. *Thompson,* 15 Conn. Sup. 146, 148; *Daniel* v. *Patrick,* 333 S.W.2d 504, 508 (Ky.); *Smith* v. *Simpson,* 260 N.C. 601, 611, 612; *Lehl* v. *Hull,* 152 Ore. 470, 474; *Porter* v. *Hardee,* 241 S.C. 474, 477; *Foran* v. *Kallio,* 56 Wash. 2d 769, 771; *Mylnar* v. *Hall,* 55 Wash. 2d 739, 745.

A more difficult question for our determination is whether the father ought to be held liable under § 52-183, which creates a rebuttable presumption of agency growing out of the fact that the car was registered in his name. See *Koops* v. *Gregg,* 130 Conn. 185, 187; *Skut* v. *Boardman,* 137 Conn. 675,

677.  Upon a strikingly similar factual situation, Judge Comley (as he then was) in the *Krappatsch* case, supra, found that the defendants offered proof of sufficient facts to overcome the statutory presumption, thereby placing the burden of establishing agency on the plaintiffs.  And in finding that the plaintiffs had successfully met that burden, Judge Comley concluded that the son was operating the car as his father's agent.  He ruled: "To be sure, Kenneth [the son] was performing no particular business for his father when the accident happened. However, it does appear that Kenneth was a minor son living away from home.  He needed a car in order to go to and from his employment and to get about in the general activities of his life.  To assist him in doing this the father aided him in the purchase of the car and assumed the responsibilities of the registered owner.  Under these circumstances and in view of the decisions . . . , it seems to me that the father is liable."  But the court in the case at bar found that the son "was not on any business of the . . . [father] on May 3, 1963," nor on any other occasion; indeed, a careful review of the findings compels a conclusion that the son was not at any time "the agent and servant" of his father.  See § 52-183.  Implicit in the findings is the failure on the part of the plaintiff successfully to meet this burden.

In the course of the opinion in *Krappatsch* v. *Thompson,* supra, Judge Comley said (p. 147): "Under these circumstances the father is estopped to deny ownership or to evade the responsibility that goes with that ownership."  Judge Comley was, unwittingly perhaps, following the New York rule laid down in the leading case of *Shuba* v. *Greendonner,* 271 N.Y. 189.  In that case, the plaintiffs, injured in New York by an automobile driven by the defendant's minor son, sued under a New York

statute which makes the owner of an automobile liable for damages for injuries resulting from the negligence of its operator. The automobile was registered in Connecticut in the defendant's name to avoid compliance with the Connecticut statutes (now, as amended, §§ 14-14, 14-112) which required proof of financial responsibility as a prerequisite of registration for minors over sixteen years of age. The Court of Appeals held (p. 193) that the defendant was estopped to prove ownership in his son. See 8 Am. Jur. 2d 156, n.13, Automobiles and Highway Traffic, § 603. New York has consistently adhered to the *Shuba* doctrine. *Reese* v. *Reamore,* 292 N.Y. 292, 295; *Elfeld* v. *Burkham Auto Renting Co.,* 299 N.Y. 336, 343; *Switzer* v. *Aldrich,* 307 N.Y. 56, 59; *Phoenix Ins. Co.* v. *Guthiel,* 2 N.Y.2d 584, 591 (dissenting opinion). The New York rule has been followed in at least two jurisdictions. *Irvine* v. *Wilson,* 137 Cal. App. 2d Sup. 843, 849; *Eggerding* v. *Bicknell,* 20 N.J. 106, 110. It has been questioned in *Gams* v. *Oberholtzer,* 50 Wash. 2d 174, 178.

In this state, the "responsibility that goes with that ownership," referred to by Judge Comley in the *Krappatsch* case, is the liability imposed upon the owner of the motor vehicle for the torts committed by himself as operator or by an operator who is the "agent and servant of the owner of such motor vehicle and operating the same in the course of his employment." § 52-183. The concept of "servant" and "employment" in automobile cases, however, is markedly different from that concept in other types of cases. For example, the "business" of the owner of the automobile "may well mean no more than an act 'to promote legitimate and important interests' of the defendant owner." *Koops* v. *Gregg,* 130 Conn. 185, 193 (dissenting opinion). Thus, also, the family car doctrine creates an agent-servant relationship in a transaction that in other

forms of personal property would be considered as a bailment. These results show a legislative and judicial concern for risks resulting when an automobile owner entrusts the vehicle to another—a concern that was originally nurtured by the fact that early automobile insurance policies provided coverage for the owner only, thus stimulating the ingenuity of counsel and court to find a proper basis for a finding of vicarious liability.

And as the use of the automobile expanded, there was at the same time a broadening legislative and judicial policy in favor of finding the owner of the motor vehicle legally liable for torts committed by anyone driving it with his permission. Such a policy has been reflected in the standard form of insurance policies and also in the owner-consent statutes in many states. In our own state, this policy has found its most advanced expression in those provisions of §§ 14-14 and 14-112 where proof of financial responsibility is required for registration by a minor owner of his automobile "for the reasonable protection of other persons." § 14-112. In other words, the manifest intention of these sections of the statutes is that no minor should be permitted to have his vehicle legally on the highway unless he has filed proof of financial responsibility as required by § 14-112.

In the present case, the father sought to nullify these statutes by registering his son's car. The public was thereby denied the financial responsibility which it would have had if the minor had complied with the statutes. We cannot, of course, require financial responsibility to be filed ex post facto, but we can, and we do, hold that in the furtherance of the legislative policy as embodied in §§ 14-14 and 14-112, where a minor's vehicle is registered in the name of the father for the purpose of evading finan-

cial responsibility, the registered owner of the vehicle is estopped to deny not only ownership of the vehicle but also that the minor-owner was acting in furtherance of the business of the father when the tort occurred. Whether we would apply the same rule if the operator were someone else other than the owner-minor, we do not now decide.[2] Thus, we are of the opinion that our decision imposing liability on the father reaches a result consistent with the purposes of the registration statutes.

There is error, the judgment in favor of the defendant Harklis Trent is set aside and the case is remanded with direction to render judgment in favor of the plaintiff against both defendants.

In this opinion KOSICKI and DEARINGTON, Js., concurred.

---

[2] It has been suggested by eminent authority that "a frank judicial reappraisal of the whole judicially created doctrine of vicarious liability with its court-made limits" be made rather than a resort to limitations on the doctrine which reflect distortions which fictions so often involve. See 2 Harper & James, Torts, p. 1421.